# United States Court of Appeals

## For the First Circuit

No. 03-2416

CESAR TORRES-TORRES,

Plaintiff, Appellant,

v.

COMMONWEALTH OF PUERTO RICO, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Lipez and Howard,
Circuit Judges.

Pablo Landrau Pirazzi and Aldarondo & Lopez Bras on brief for appellant.
Eileen Landron Guardiola, Eduardo A. Vera Ramirez, Annabelle Rodriguez, Secretary of Justice, Ivonne Palerm Cruz, Deputy Secretary of Justice in Charge of Litigation, and Landron & Vera, LLP. on brief for appellee Commonwealth of Puerto Rico.
Pedro A. Delgado Hernandez on brief for appellee State Elections Commission.

October 31, 2003

**Per Curiam**.  This is a challenge to a Puerto Rican law, 21 P.R. Laws Ann. § 4101(f), that permanently disqualifies as a candidate for mayor any person who has been removed from public office for misconduct.[1]  Plaintiff Cesar Torres-Torres, a member of the New Progressive Party (NPP), seeks to run for mayor of the municipality of Juncos.  Pursuant to § 4101(f), however, he has been barred from doing so because of his removal from that post in 1987.  Objecting to such "decertification," plaintiff filed the instant action under 42 U.S.C. § 1983 alleging that the statute contravened the First and Fourteenth Amendments.  The district court rejected those claims on the merits and plaintiff has appealed.

Severe time constraints are present: plaintiff filed the appeal on October 17, 2003 and, rather than seeking a stay, has requested that a decision be issued before November 9, 2003, the date of the NPP primary.  By agreement, the parties have filed briefs on an expedited basis and have waived oral argument. Having fully reviewed the record and the parties' submissions, we now affirm.

## Background

This action is a reprise of one filed by plaintiff in 1988.  After being disqualified from that year's mayoral race

---

[1]  Section 4101(f) requires that a mayoral aspirant "[h]ave never been removed from office or employment for misconduct in the performance of his/her duties."

pursuant to a (similarly worded) predecessor to § 4101(f), plaintiff mounted a constitutional challenge. The ensuing district court opinion, Torres v. Comision Estatal de Elecciones, 700 F. Supp. 613 (D.P.R. 1988), recounts much of the pertinent procedural background. We rely thereon and for present purposes deem it sufficient to note the following.

Plaintiff was elected mayor of Juncos in 1976 and was reelected in 1980 and 1984. In 1986, the governor, a member of the Popular Democratic Party (PDP), summarily suspended him from office and filed a complaint with the Municipal Complaints Commission, an agency authorized to adjudicate allegations of mayoral misconduct. See 21 P.R. Laws Ann. § 4108 (current version of removal provision). The charges against plaintiff included misuse of public funds, inexcusable negligence, and conduct detrimental to the public interest. In June 1987, following 18 days of hearings at which plaintiff was represented by counsel, the Complaints Commission issued a resolution upholding all charges and ordering his removal.[2] Plaintiff's attempt to obtain judicial review of this ruling was ultimately rejected as untimely. See Hernandez-

---

[2] As described in its decision, the Commission found "repeated acts" of "appropriation of public funds for the purpose of paying election-related debts through the preparation of false documents" and "cases in which public officials appropriated municipal funds and divided them with other persons for their own use." Decis. at 29-30. The district court in Torres could not "emphasize enough the gravity of these offenses." 700 F. Supp. at 624.

Colon v. Torres, 21 P.R. Offic. Trans. 516 (1988).  As a result, "the Complaints Commission's factual findings and conclusions [became] final and not subject to review." Torres, 700 F. Supp. at 616.  Plaintiff has never been indicted, tried, or convicted for any of the charges against him.

As mentioned, plaintiff was disqualified from the 1988 mayoral election because of the predecessor to § 4101(f).  In the ensuing litigation, the Torres court rejected his challenges to that provision, even while voicing reservations about extending the disqualification "beyond the election immediately following the term in which a person is dismissed." Id. at 625.  After sitting out two electoral cycles, plaintiff sought to be certified as an independent candidate for the 2000 election.  He was again declared ineligible and was again denied judicial relief (from the Commonwealth courts).  He ended up running as a write-in candidate and came in second to the PDP candidate by a margin of 7,453 to 6,574 votes.

Plaintiff filed the instant action in April 2003, alleging that he wanted to run as the NPP's mayoral candidate in the 2004 election but was barred from doing so by § 4101(f).  The magistrate judge concluded that plaintiff was likely to prevail on the merits and recommended that a preliminary injunction issue. The district court took a different view, first denying the request for a preliminary injunction and later rejecting plaintiff's claims

on the merits.  Meanwhile, the Elections Commission in September 2003 again decertified plaintiff as a candidate.

## Discussion

Ballot-access cases typically involve both a First Amendment claim (involving the associational and voting rights of candidates and their supporters) and an equal protection claim (challenging a classification between groups of candidates). Although the two claims often overlap, it is sometimes appropriate to analyze them separately under different standards of review. Plaintiff in his complaint relied solely on equal protection. Yet his subsequent pleadings included a First Amendment claim, and defendants addressed both allegations on the merits without any suggestion of waiver, as did the magistrate judge. We therefore conclude that both claims have been adequately presented. See, e.g., Mancuso v. Taft, 476 F.2d 187, 190 (1st Cir. 1973) (noting that candidate has standing to "raise the constitutional rights of voters").

### First Amendment Claim

As the parties agree, this claim is subject to the balancing test promulgated in Anderson v. Celebrezze, 460 U.S. 780, 789 (1983).[3]  The Court has more recently summarized that test as follows:

_____

[3]  While the district court did not expressly apply the Anderson test, much of its reasoning is directly applicable thereto.

-5-

When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.

Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997) (internal quotation marks and citations omitted). Under this standard, "[t]he rigorousness of the ensuing judicial inquiry depends upon the extent to which the challenged regulation burdens First Amendment rights." Perez-Guzman v. Gracia, ___ F.3d ___, 2003 WL 22309626, at *9 (1st Cir. 2003). We think it clear that § 4101(f) as applied to plaintiff is sustainable under this test, for reasons that can be briefly explained.

First, the burden on plaintiff's and voters' rights under the First Amendment is not severe, which means that strict scrutiny is inapplicable. Candidacy does not rise to the level of a fundamental right. See, e.g., Clements v. Fashing, 457 U.S. 957, 963 (1982) (plurality). And § 4101(f) applies even-handedly, without discriminating on the basis of viewpoint or any other suspect classification. It is true that plaintiff's supporters--a sizable group judging from the 2000 returns--will be deprived of

their candidate of choice. But as the Court stated in Timmons: "[t]hat a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." 520 U.S. at 359. Because plaintiff's supporters retain the option of voting for another NPP candidate with a similar viewpoint, their voting rights will be only marginally affected.

Second, it is undisputed that the Commonwealth has a legitimate and powerful interest in eradicating public corruption. See, e.g., Nixon v. Shrink Missouri Gov. PAC, 528 U.S. 377, 389 (2000) ("The importance of the governmental interest in preventing [corruption] has never been doubted.") (quoting First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 788 n.26 (1978) (brackets in original)).

Under the final Anderson criterion, as mentioned, a regulation need not be narrowly tailored to advance a compelling state interest where, as here, the impact on First Amendment rights is not severe. Instead, "less exacting review" is called for. Timmons, 520 U.S. at 358. Plaintiff, relying on the reservations voiced in dictum by the Torres court, see 700 F. Supp. at 625, nonetheless contends that a lifetime disqualification cannot be justified. In particular, he relies on (1) the prospect of § 4101(f) being employed to discriminate against political adversaries, (2) the statute's failure to allow for possible

-7-

rehabilitation, and (3) the long-term effects on voters' rights. We are unpersuaded.

As to the first point, there is no evidence that plaintiff's removal as mayor was politically motivated, and the Torres court specifically found that the statute "ha[d] not been discriminatorily applied to the plaintiff." Id. at 622.[4] This being an as-applied challenge, plaintiff's concern about possible discrimination against others is misplaced. His second point overlooks the fact that § 4101(f) not only "punishes corruption but also deters it." Id. at 624. And it fails to account for more recent case law rejecting constitutional challenges to lifetime disqualifications of various sorts. See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 470-73 (1991) (mandatory retirement age for elected judges); Citizens for Legis. Choice v. Miller, 144 F.3d 916, 920-24 (6th Cir. 1998) (lifetime term limits for state legislators). Plaintiff's final point proves unavailing given § 4101(f)'s minimal impact on the rights of voters, as earlier discussed.

We conclude that § 4101(f) constitutes a "reasonable, nondiscriminatory restriction" which, under the Anderson test, is sustainable under the First Amendment in light of the Commonwealth's "important regulatory interest" in combating

---

[4] Plaintiff has not here claimed to be innocent of the misconduct charges. And he forfeited his chance to challenge his removal by not timely seeking court review.

-8-

corruption at the municipal level.  Timmons, 520 U.S. at 358 (internal quotation marks omitted).

**Equal Protection Claim**

This allegation requires little discussion.  As the claim has been narrowed on appeal, plaintiff complains of the disparate treatment afforded by § 4101(f) as compared to 3 P.R. Laws Ann. § 1491.  The latter, a general provision applicable to all public servants, prohibits inter alia any person convicted of certain misdemeanors from seeking or holding any elective office or public service position for eight years.[5]  Such a classification is subject to rational-basis review, see, e.g., Clements, 457 U.S. at 963 (plurality), and is readily sustainable thereunder.

It suffices to note the following.  The legislature could rationally conclude that mayoral aspirants should be subjected to more stringent sanctions than other government employees-- particularly given the importance of the mayor's office in Puerto Rico.  See, e.g., Torres, 700 F. Supp. at 623-24.  Likewise, the legislature need not treat all current or former officeholders equally, but instead may regulate "one step at a time, addressing itself to the phase of the problem which seems most acute." Clements, 457 U.S. at 969 (plurality) (internal quotation marks omitted); accord id. at 973-74 (Stevens, J., concurring).

---

[5]  We deem plaintiff's earlier argument concerning § 1491's effect on convicted felons to have been abandoned.

-9-

## Conclusion

For these reasons, we conclude that § 4101(f) as applied to plaintiff violates neither the First Amendment nor the Equal Protection Clause. Accord Popular Democratic Party v. Planadeball Poggy, 21 P.R. Offic. Trans. 566 (1988) (rejecting constitutional challenges to predecessor statute under Commonwealth law).

Affirmed.