# United States Court of Appeals
## For the First Circuit

No. 10-1360

LIBERTARIAN PARTY OF NEW HAMPSHIRE ET AL.,

Plaintiffs, Appellants,

v.

WILLIAM M. GARDNER, in his official capacity as
Secretary of State of New Hampshire,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. James R. Muirhead, U.S. Magistrate Judge]

Before

Lynch, Chief Judge,
Selya and Howard, Circuit Judges.

Gary Sinawski on brief for appellants.
Nancy J. Smith, Senior Assistant Attorney General, and
Michael A. Delaney, Attorney General, on brief for appellee.

February 24, 2011

**LYNCH**, **Chief Judge**.  This appeal raises constitutional election law issues regarding the listing of political affiliations next to the names of candidates on a state general election ballot.

On New Hampshire's 2008 ballot, in a column headed "Other Candidates," in the row for the offices of President and Vice President, two pairs of candidates were identified as "Libertarian."  One pair was Bob Barr and Wayne Root, who had received the Libertarian Party's nomination at its May 2008 National Convention, and the other pair was George Phillies and Christopher Bennett, who had failed to secure the nomination at this convention.

There were also columns on the ballot headed "Republican Candidates" and "Democratic Candidates," and under these headings were listed only the names of the nominees of those parties.  At no point did the term "nominee" appear on the ballot, but the ballot may be read as indicating that the names listed under "Republican Candidates" and "Democratic Candidates" were those respective parties' nominees.

On September 11, 2008, the Libertarian Party of New Hampshire and associated individuals (hereinafter, "the Libertarian Party")[1] brought suit in federal court arguing that the ballot's

_____

[1]   Although New Hampshire election law defines the term "party" narrowly as "any political organization which at the preceding state general election received at least 4 percent of the total number of votes cast for any one of the following: the office of governor or the offices of United States senators," N.H. Rev.

identification of "Libertarian" candidates who were not the party's nominees violated their First Amendment rights by causing voter confusion, vote dilution, and interference with their associational rights, and also their Fourteenth Amendment rights of equal protection.[2]

Before the election, the Libertarian Party sought declaratory and injunctive relief requiring that the Secretary of State of New Hampshire, William M. Gardner, remove from the ballot the names of the Libertarian non-nominees, Phillies and Bennett, even though they had received the requisite number of petition signatures to qualify for ballot placement. The Libertarian Party argued that it had the right to "substitute" candidates, but what it sought was in effect the removal of the non-nominees from the ballot. The district court scheduled an evidentiary hearing on the preliminary injunction request, but the day before the hearing the Libertarian Party informed the court that it was no longer seeking

---

Stat. § 652:11, we will refer to the plaintiff as it has described itself, "Libertarian Party." No meaning under state law is to be attached to this name; during the 2008 election, the Libertarian Party was not a recognized political party under state law.

[2] As in Werme v. Merrill, 84 F.3d 479 (1st Cir. 1996), we will not categorically "distinguish between the burdens placed on the rights of the Libertarian Party and those placed on the rights of voters who wish to cast their ballots for that party's candidates," because as "a general matter, political parties purport to represent the interests of their supporters, and 'the rights of voters and the rights of candidates do not lend themselves to neat separation.'" Id. at 484 n.4 (quoting Burdick v. Takushi, 504 U.S. 428, 438 (1992)).

-3-

a preliminary injunction and the court granted its motion to dispense with the hearing.

After the election, in a cross-motion for summary judgment, the Libertarian Party switched gears, stating that its request for relief could also be met by striking the affiliation "Libertarian" from the names of the two Libertarian non-nominees. It explained that it only sought to vindicate the Libertarian Party's right "to control the use of the 'Libertarian' designation by candidates for public office in situations where the party nominates or otherwise endorses candidates," and "to substitute candidacies in appropriate situations."

After finding that the case had not become moot by virtue of the passing of the election, the district court granted summary judgment for the Secretary.

We affirm. The Libertarian Party has failed to identify an unconstitutional burden on its First Amendment rights, having put forward no evidence of actual voter confusion, vote dilution, or other harm to its associational interests. As to the Libertarian Party's Fourteenth Amendment claims, the various distinctions that New Hampshire draws between candidates who appear on the ballot as nominees of recognized political parties and organizations, and those who appear on the ballot in their individual capacities, are plainly constitutional.

I.

New Hampshire's general election ballot on November 4, 2008 contained five columns. A copy of that ballot submitted to the district court by the Secretary is attached to this opinion as an Appendix. The first column was headed "Offices" and listed vertically the contested offices in the election: President and Vice President of the United States, Governor, United States Senator, and Representative in Congress. The remaining four columns were headed, in order from left to right, "Republican Candidates," "Other Candidates," "Democratic Candidates," and "Write-In Candidates." Listed vertically in these columns were the names of the candidates. In the row corresponding to the offices of President and Vice-President, the Republican and Democratic columns each contained one pair of candidates: John McCain and Sarah Palin, and Barack Obama and Joe Biden, respectively. The Other Candidates column, located between the Republican and Democratic columns, contained the names of three pairs of candidates listed in this order: (1) Ralph Nader and Matt Gonzales, (2) George Phillies and Christopher Bennett, and (3) Bob Barr and Wayne A. Root. The ballot identified Nader and Gonzales as "Independent," and identified each of the remaining two pairs of candidates as "Libertarian." No names were listed in the Write In Candidates column.

We first describe how candidates qualify to appear on the ballot under New Hampshire law, and then discuss how the listing of their names and party affiliations on the ballot and other pertinent features of elections are regulated by the state.

New Hampshire provides potential candidates with three avenues to placement on the general election ballot. The New Hampshire Supreme Court has described this scheme. See Libertarian Party of N.H. v. New Hampshire, 910 A.2d 1276, 1278-79 (N.H. 2006).

First, a candidate may be placed on the ballot as the nominee chosen in the primary of a state recognized "party." A "party" is defined as a "political organization which at the preceding state general election received at least 4 percent of the total number of votes cast for any one of the following: the office of governor or the offices of United States senators." N.H. Rev. Stat. § 652:11.

Second, a candidate may be placed on the ballot as the nominee of a state recognized "political organization." A political organization may gain state recognition and "have its name placed on the ballot for the state general election by submitting the requisite number of nomination papers." Id. § 655:40-a. It must submit "the names of registered voters equaling 3 percent of the total votes cast in the previous state general election." Id. § 655:42(III).

Third, as an alternative to nomination by party or political organization, "a candidate may have his or her name placed on the ballot for the state general election by submitting the requisite number of nomination papers." Id. § 655:40. In the case of candidates for President, this avenue requires the signatures of 3,000 registered voters--1,500 from each congressional district in the state. Id. § 655:42(I). These nomination papers must state "the political organization or principles the candidate represents." Id. § 655:40. Both Phillies and Bennett as well as Barr and Root followed this third avenue, gathering the requisite number of signatures and listing "Libertarian" as the political organization or principles that they represented.

Inherent in New Hampshire's statutory scheme for ballot qualification is another set of pertinent distinctions, these going to the appearance of the ballot and the listing of "party columns" and "additional columns." See id. § 656:5(I). There are two ways in which a column on the ballot may be obtained. Any party recognized under state law (that is, one that received at least 4% of the prior vote for the pertinent offices) is able to obtain a column and choose the candidates who appear in it; these candidates "shall be arranged upon the state general election ballot in successive party columns," and in general, "[e]ach separate column

-7-

shall contain the names of the candidates of one party." Id.[3] Any political organization that is recognized under state law (that is, one that obtained nomination signatures equaling at least 3 percent of the total votes cast in the prior state general election) has the same entitlement to a column, according to the affidavit of the Deputy Secretary of State David M. Scanlan. See also id. §§ 655:40-b, 656:5(I).[4] In the 2008 election, only the Republican and Democratic parties qualified for party columns. The Libertarian Party did not qualify for a party column or a political organization column; if it had done so, its nominees could have been listed under its party name.

---

[3] However, "if only a part of a full list of candidates is nominated by a political party, 2 or more such lists may be arranged whenever practicable in the same column." N.H. Rev. Stat. § 656:5(I).

[4] Although a political organization's entitlement to a column is not clearly stated in the law, Scanlan's affidavit is consistent with the statutory provision referring to "[t]he names of the candidates to be listed on the state general election ballot under the political organization nominated pursuant to RSA 655:40-a," N.H. Stat. § 655:40-b (emphasis added), as well as the provision stating that "the secretary of state shall determine the vertical location of any additional columns that may appear on the ballot," id. § 656:5(I). That the New Hampshire statutory scheme does not use the term "party column" to refer only to recognized parties is also indicated by a provision requiring that the "names of all candidates nominated in accordance with the election laws," not just those nominated by parties, "shall be arranged upon the state general election ballot in successive party columns." Id. (emphasis added).

Significantly, the Secretary is authorized by state law to list the party affiliations of candidates on the ballot, but that authorization is limited:

> Every state general election ballot shall contain the name of each candidate who has been nominated in accordance with the election laws, except as hereinafter provided, and shall contain no other name except party appellations.

Id. § 656:4 (emphasis added).[5] The Secretary must comply with this limit on his ability to place information other than "party appellations" on the ballot.[6] The Libertarian Party has not specifically challenged, either on its face or as applied, the limitation in this provision, but rather says its challenge is to the overall scheme that produced the result here.

A third feature of New Hampshire's election law that is worth highlighting has to do with the limits it places on a potential candidate's ability to appear on the ballot by filing individual nomination papers. This avenue of placement on the ballot is not available to an individual who "filed as a candidate

---

[5] At no time did the Libertarian Party propose that the Secretary add the term "nominee" after the term "Libertarian" to the appropriate set of candidates when the different sets of candidates were listed in the Other Candidates column. Because the issue was never raised, we consider it no further.

[6] For a candidate who is not nominated by a party or political organization, the Secretary apparently interprets this provision as requiring or permitting the placement on the ballot of "the political organization or principles the candidate represents," which the candidate is required to list on his or her nomination papers. N.H. Rev. Stat. § 655:40.

in the state primary election."  Id. § 655:43(IV).  With this disqualification provision, New Hampshire protects recognized party nominees from challenge by primary losers.  In the case before us, this provision did not protect Barr and Root from challenge by Phillies and Bennett because the Libertarian Party is not recognized by the state and did not participate in the state primary election.  We note that the provision also does not protect a recognized party from challenge by a candidate who is affiliated with the party but was not a candidate in the party's primary.  And again, the Libertarian Party has not challenged this specific provision of New Hampshire's law.

A final pertinent distinction in New Hampshire's election law has to do with its provisions for the substitution of candidates.  A recognized party may, in the event of a vacancy for any office on its party ticket following its primary, designate a new candidate to fill this vacancy.  Id. § 655:37.  In addition, if a party's nominated candidate dies, or makes an oath of disqualification based on age, domicile, or incapacitating physical disability acquired subsequent to the primary, a new candidate may be substituted by the appropriate party committee.  Id. §§ 655:38, 39.[7]

---

[7]  It appears that all of these substitution provisions apply only to candidates nominated by recognized parties.

II.

We review de novo the question of whether this case became moot when the election finished, "accepting as true the material factual allegations contained in the complaint and drawing all reasonable inferences therefrom in the plaintiff's favor." Ramírez v. Sánchez Ramos, 438 F.3d 92, 96-97 (1st Cir. 2006). This is a close question. Cf. Barr v. Galvin, 626 F.3d 99, 104-06 (1st Cir. 2010).

If a case is moot, even if it becomes moot on appeal, we cannot hear it because "Article III of the Constitution restricts federal courts to the resolution of actual cases and controversies." Chico Serv. Station, Inc. v. Sol P.R. Ltd., No. 10-1200, 2011 WL 228048, at *12 (1st Cir. Jan. 26, 2011) (quoting Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 16 (1st Cir. 2007)) (internal quotation marks omitted). "[W]hen the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome . . . a case or controversy ceases to exist, and dismissal of the action is compulsory." Id. (quoting Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)) (internal quotation mark omitted).

The question here is whether this case falls within the narrow exception to general principles of mootness for cases that raise issues that are "capable of repetition, yet evading review." Cruz, 252 F.3d at 534 (quoting S. Pac. Terminal Co. v. ICC, 219

-11-

U.S. 498, 515 (1911)) (internal quotation marks omitted).  Election cases often fall within this category, <u>Storer</u> v. <u>Brown</u>, 415 U.S. 724, 737 n.8 (1974); <u>N.H. Right to Life Political Action Comm.</u> v. <u>Gardner</u>, 99 F.3d 8, 18 (1st Cir. 1996), but "not every election case fits within its four corners," <u>Barr</u>, 626 F.3d at 105.

The Supreme Court has placed on the party asserting that a case is not moot the burden of showing "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation or a demonstrated probability that the same complaining party will be subject to the same action again."  <u>FEC</u> v. <u>Wis. Right To Life, Inc.</u>, 551 U.S. 449, 462 (2007) (quoting <u>Spencer</u> v. <u>Kemna</u>, 523 U.S. 1, 17 (1998)) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Barr</u>, 626 F.3d at 105.

As to the first prong of this test, it is highly likely that the merits of the constitutional challenge presented by this case could not have been fully resolved between the time it became ripe and the election.  <u>Cf.</u> <u>Barr</u>, 626 F.3d at 106.  Here, Phillies and Bennett qualified to be listed on the ballot on July 30, 2008, and Barr and Root qualified on September 3, 2008, which was the deadline.  The Libertarian Party filed suit on September 11, 2008. The travel of this case, including appeal, could not have been totally concluded before the election (let alone before the date on which the general election ballot was printed).  Indeed, had the

-12-

Libertarian Party attempted to put on evidence of voter confusion affecting the election, it would have relied in part on post-election analysis. Moreover, as the deadline for qualification by nomination papers is the Wednesday one week before the state office primary election, N.H. Rev. Stat. § 655:43(I), which is the second Tuesday in September, id. § 653:8, the situation complained of could again emerge only two months before the November elections as it did here.

The more difficult question is whether there is a reasonable expectation that what happened here will in fact happen again. This precise situation--the listing of two pairs of names in the Other Candidates column with the same party affiliation--has apparently never come up before in New Hampshire. There is little reason to doubt that there will be a candidate supported by the Libertarian Party in future elections in New Hampshire. The Libertarian Party has had sufficient support in New Hampshire to have its candidates listed on the ballot for at least two decades, so much so that in the 1992 and 1994 elections, the Libertarian Party received enough votes to qualify, under section 652:11, as a "party" in the 1994 and 1996 general elections.

The same issues presented here will only recur, however, if the Libertarian Party does not achieve party or political organization status and resorts, as it did here, to the individual petition process of section 655:40 to get its nominees on the

ballot. Although the Libertarian Party qualified as a "party" for the 1994 and 1996 general elections, it lost this status when it received insufficient votes in the 1996 election. In 2000, it received enough signatures to qualify, under section 655:40-a, as a political organization in the 2000 general election, but it has not met this requirement since. It is reasonable to expect that the Libertarian Party will again face a situation in which it does not qualify as a recognized party or political organization, but its nominee succeeds in receiving enough nomination petition signatures to be listed individually on the ballot. Cf. Barr, 626 F.3d at 106. There is, however, more to the equation.

The "problem" complained of only occurs if a qualifying Libertarian individual decides to put his or her name on the ballot despite the Libertarian Party naming another individual as the party nominee. While apparently that had not happened before 2008, it has now happened. That alone may encourage individual Libertarians--or others--who do not end up being nominees to qualify by submitting nomination papers in the future. The state's constitution enshrines the concept that every individual has a right to run for office. See N.H. Const. pt. 1, art. 11 ("Every inhabitant of the state, having the proper qualifications, has an equal right to be elected into office."). Here, Phillies and Bennett knew that they had not won the nomination of the May 2008 Libertarian National Convention when they qualified for placement

-14-

on the New Hampshire ballot at the end of July 2008.  Some evidence from the Libertarian Party about why it expects its nominees to be challenged by other Libertarian candidates in the future would have been helpful, but none was offered.  While the question is close, we conclude that the case is not moot.

### III.

Our review of the dismissal of the case is de novo, both because we are reviewing entry of summary judgment and because, in the end, the case presents only issues of law.  Chiang v. Verizon New England Inc., 595 F.3d 26, 34 (1st Cir. 2010).

We review all of the First and Fourteenth Amendment claims under the sliding scale approach announced by the Supreme Court in Anderson v. Celebrezze, 460 U.S. 780, 789-90 (1983), and Burdick v. Takushi, 504 U.S. 428, 434 (1992).  See Barr, 626 F.3d at 109 (discussing the sliding scale approach); Werme v. Merrill, 84 F.3d 479, 483 (1st Cir. 1996) (same).  This method of analysis for election regulations requires an assessment of the burdens, if any, placed on a plaintiff's constitutionally protected rights, followed by an evaluation of the precise interests put forward by the state as justifications for the burdens.  Werme, 84 F.3d at 483.  If a regulation places "severe restrictions" on a plaintiff's First and Fourteenth Amendment rights, "the regulation must be narrowly drawn to advance a state interest of compelling importance."  Id. at 484 (quoting Burdick, 504 U.S. at 434).  By

-15-

contrast, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." Id. (quoting Burdick, 504 U.S. at 434).

Unlike many election cases, this case is not about denial of access to the ballot or a party's inability to vote for its nominee.[8] See, e.g., Barr, 626 F.3d 99; McClure v. Galvin, 386 F.3d 36 (1st Cir. 2004); Torres-Torres v. Puerto Rico, 353 F.3d 79 (1st Cir. 2003). Rather, this is a case about a state's regulation of what is said on a ballot about the party affiliation of a candidate. See, e.g., Dart v. Brown, 717 F.2d 1491 (5th Cir. 1983) (finding constitutional a state's decision to provide party affiliation on ballot for candidates of parties recognized by the state but not for candidates of unrecognized parties). We consider the asserted First and Fourteenth Amendment "rights" in turn.

A.      First Amendment Claims

1.      Right of Exclusive Access

The Libertarian Party argued to the district court that it had a right of "exclusive access to the ballot" which was denied by the state. It sought relief that would have removed the names

---

[8]      Nor has the Libertarian Party alleged that New Hampshire interfered with its constitutionally protected interest in how it structures its nominating process under Tashjian v. Republican Party of Conn., 479 U.S. 208 (1986).

-16-

of the non-nominee qualifying Libertarian candidates, Phillies and Bennett.

The Libertarian Party cites no case holding that a political organization or party not recognized as such by a state has the right to remove from a ballot the names of candidates who otherwise meet state ballot law qualifications and who identify themselves with that organization's philosophy.[9]

The Libertarian Party's cause is not advanced by its attempt to characterize its request to remove the names of Phillies and Bennett as a mere request for "substitution." New Hampshire law provides recognized parties with the right to substitute candidates in limited circumstances. See N.H. Rev. Stat. §§ 655:37-39. But the Libertarian Party makes no argument that these statutory rights are required by the First Amendment. And in any event, none of the conditions under which parties can substitute candidates under New Hampshire law provided the basis for the Libertarian Party's claimed right of substitution. The Libertarian Party was not seeking substitution to fill a vacancy caused by the withdrawal, disqualification, or death of its nominee.

Furthermore, even if the Libertarian Party had demonstrated a burden to its constitutionally protected rights, the

---

[9] There is no question but that Phillies and Bennett are in fact Libertarians and have been active participants in the efforts of the Libertarian Party.

-17-

state's policy of limiting substitution rights to party candidates is based on its "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." Anderson, 460 U.S. at 789 n.9. "Logically, this interest is advanced by the Secretary's refusal to grant to non-party candidates the right to substitution . . . . Granting such substitution would effectuate an end-run around the signature requirement--a requirement that allows the state to ascertain whether a given candidate has enough support to warrant inclusion on the ballot." Barr, 626 F.3d at 111.

The Libertarian Party's claimed right to deny ballot access to Libertarian candidates it does not endorse, via removal or "substitution" of Phillies and Bennett, fails.

2.     Right to Exclusive Use of Name

The Libertarian Party's next claim is that it has a right to exclusive use of its name and that the state was at least obligated to remove the affiliation "Libertarian" from the names of Phillies and Bennett. It contends that the state's failure to do so interfered with its members' rights of association and political speech, and that the use of the Libertarian name by Phillies and Bennett diluted the party's voting strength.

States may grant recognized political parties and organizations the right to control the use of their names. See, e.g., Norman v. Reed, 502 U.S. 279, 290 (1992) ("To prevent

-18-

misrepresentation and electoral confusion, [a state] may, of course, prohibit candidates running for office in one subdivision from adopting the name of a party established in another if they are not in any way affiliated with the party."); Mass. Gen. Laws ch. 53 § 8 ("If a candidate is nominated otherwise than by a political party the name of a political party shall not be used in his political designation . . . ."). But the Libertarian Party cites no case holding that a political organization or party not recognized as such by the state has this right under the First Amendment.

What the Libertarian Party appears to be arguing is that it had a free speech right to use the ballot to advertise who its nominees were. But the Supreme Court in Timmons v. Twin Cities Area New Party, 520 U.S. 351 (1997), expressly rejected the argument that a party "has a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate." Id. at 363.

In Timmons, the Court upheld a state "fusion" ban that prohibited a candidate from appearing on the ballot as the candidate of more than one party. Id. at 369. The plaintiff, a party that wanted to place on the ballot a candidate who was already representing another party, claimed that the ban burdened the party's right "to communicate its choice of nominees on the ballot on terms equal to those offered other parties, and the right

-19-

of the party's supporters and other voters to receive that information." Id. at 362. The Court rejected this argument, explaining that "[b]allots serve primarily to elect candidates, not as forums for political expression." Id. at 363; see also Dart, 717 F.2d at 1499 ("Although the words 'Libertarian Party' did not appear under [its candidate's] name, the Libertarian Party was not denied access to the ballot. . . . It was a candidate, not a party, ballot. . . . As [the party's candidate] was granted access to the ballot, so was the Libertarian Party.").

Timmons built on earlier holdings to similar effect. In Burdick, for example, the Court had explained that "[a]ttributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently." Burdick, 504 U.S. at 438. And the Court has since returned to the theme, stating not only that the "First Amendment does not give political parties a right to have their nominees designated as such on the ballot," but also that "[p]arties do not gain such a right simply because the State affords candidates the opportunity to indicate their party preference on the ballot." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 453 n.7. (2008).

Even if we assume arguendo that the Libertarian Party has some interest in preventing voter confusion of its nominated candidates with other candidates who also espouse Libertarian ideals, the question of whether it may enlist state officials to

prevent such confusion is one we need not reach on the facts before us. Here, the Libertarian Party has made no claim that Phillies and Bennett were not in fact Libertarians or that the ballot was otherwise inaccurate. And it has provided no evidence that the ballot misled voters in any way.[10] On its face, the ballot did not itself indicate that Phillies and Bennett were the nominees of the Libertarian Party. It identified them, as well as Barr and Root, merely as Libertarian. "There is simply no basis to presume that a well-informed electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate." Id. at 454.

As to the state interests at stake, New Hampshire has a strong interest in identifying candidates in the Other Candidates column with the political organization or principles that they represent. The inclusion of this information helps prevent uninformed voting by giving voters pertinent information about the politics of all candidates on the ballot, not just those listed in the columns of parties. "There can be no question about the legitimacy of the State's interest in fostering informed and

_____

[10]    There is no requirement that a state show the existence of voter confusion before it imposes reasonable restrictions on ballot access. Munro v. Socialist Workers Party, 479 U.S. 189, 194-95 (1986).

-21-

educated expressions of the popular will in a general election." Anderson, 460 U.S. at 796.

Further, under the New Hampshire Constitution, "[e]very inhabitant of the state . . . has an equal right to be elected into office." N.H. Const. pt. 1, art. 11. The state's ballot format serves this goal, providing candidates running as individuals with the same opportunities as nominees of recognized parties or political organizations to be identified by their chosen ideology to voters in an effective way.

We reject the Libertarian Party's claim that it had a constitutional right to remove the Libertarian label from the names of Phillies and Bennett.

B.        Fourteenth Amendment Claims

We see no viable claim of differential treatment under the Equal Protection Clause and repeat what the Supreme Court said 40 years ago:

> The fact is that there are obvious differences
> in kind between the needs and potentials of a
> political party with historically established
> broad support, on the one hand, and a new or
> small political organization on the
> other. . . . Sometimes the grossest
> discrimination can lie in treating things that
> are different as though they were exactly
> alike.

Jenness v. Fortson, 403 U.S. 431, 441-42 (1971); see also Werme, 84 F.3d at 485.

It is well established that a state may base its recognition of a party, and the benefits of recognition, on the party's past electoral strength or demonstrated support. See Barr, 626 F.3d at 109-10; Werme, 84 F.3d at 484-85. New Hampshire has done so in several ways.

New Hampshire prohibits candidates who participated in the state primary election from qualifying for ballot placement through the submission of independent nomination papers, but it does not place similar prohibitions on candidates who have sought the nomination of unrecognized parties. See N.H. Rev. Stat. § 655:43(IV).

The Supreme Court has made it clear that states have a legitimate interest in preventing "party raiding and 'sore loser' candidacies by spurned primary contenders." Clingman v. Beaver, 544 U.S. 581, 596 (2005); see also Burdick, 504 U.S. at 439 ("The prohibition on write-in voting is a legitimate means of averting divisive sore-loser candidacies."). A state may also insist "that intraparty competition be settled before the general election." Am. Party of Tex. v. White, 415 U.S. 767, 781 (1974); see also Storer, 415 U.S. at 733-36.

It is entirely rational for a state to conclude, as New Hampshire has done, that it has a stronger interest in preventing "sore-loser" challenges to recognized parties than to unrecognized parties. In the case before us, the Libertarian Party National

-23-

Convention at which Phillies and Bennett lost was not a state primary, and the winners of that vote, Barr and Root, did not appear on the New Hampshire ballot by virtue of having won. Rather, both sets of Libertarian candidates appeared on the ballot in the same way--by submitting the requisite number of signatures. Unlike the winners of party primaries who are protected by the "sore loser" provision, neither set of Libertarian candidates had demonstrated greater support than the other in the state.

New Hampshire also creates distinctions on the basis of demonstrated support by allowing recognized parties and political organizations to obtain a column for their candidates on the ballot, while providing no such opportunity for candidates who appear on the ballot in their individual capacities. The Libertarian Party does not directly challenge this aspect of New Hampshire's election law, and in any event, this differentiation is plainly constitutional. See, e.g., McLain v. Meier, 637 F.2d 1159, 1168 (8th Cir. 1980) (listing similar cases).

Finally, although New Hampshire allows recognized parties--but not unrecognized parties--to substitute candidates under certain circumstances, those circumstances simply are not involved in this as applied challenge, so the Libertarian Party has no viable claim of disparate treatment.[11] And even if the

---

[11] The Libertarian Party also alleged that New Hampshire allows a recognized party to prevent candidates in the Other Candidates column from using its name, but this is not the case;

-24-

Libertarian Party had shown a modest burden on its Fourteenth Amendment rights, New Hampshire has legitimate interests that justify its decision not to provide a substitution mechanism for non-party candidates.  See Barr, 626 F.3d at 102.

The Libertarian Party's Fourteenth Amendment claims fail.

IV.

The Libertarian Party has put no material fact in dispute, and there was no error in the use of summary judgment procedure.  Nor was there error in the conclusion that its constitutional rights were not violated.  Judgment for the Secretary is affirmed.

---

candidates who appear in the Other Candidates column may in fact list Republican or Democratic as their affiliation, so there is no disparate treatment here either.

ABSENTEE
OFFICIAL BALLOT FOR
**NASHUA – WARD 1**
GENERAL ELECTION
NOVEMBER 4, 2008

SECRETARY OF STATE



## INSTRUCTIONS TO VOTERS

**1. To Vote.** Completely fill in the oval ⬤ to the right of your choice. For each office vote for not more than the number of candidates stated in the sentence: "Vote for not more than ____." If you vote for more than the stated number of candidates, your vote for that office will not be counted.

**2. To Vote by Write-In.** To vote for a person whose name is not printed on the ballot, write in the name of the person in the "write-in" space. Completely fill in the oval ⬤ to the right of your choice.

| OFFICES | REPUBLICAN CANDIDATES | OTHER CANDIDATES | DEMOCRATIC CANDIDATES | WRITE-IN CANDIDATES |
|---|---|---|---|---|
| For **President and Vice-President of the United States** Vote for not more than 1 | John McCain Sarah Palin ◯ | Independent **Ralph Nader** **"Matt" Gonzalez** ◯ <br> Libertarian **George Phillies** **Christopher Bennett** ◯ <br> Libertarian **"Bob" Barr** **Wayne A. Root** ◯ | Barack Obama "Joe" Biden ◯ | _____ President and Vice-President ◯ |
| For **Governor** Vote for not more than 1 | Joseph D. Kenney ◯ | Libertarian **Susan M. Newell** ◯ | John Lynch ◯ | _____ Governor ◯ |
| For **United States Senator** Vote for not more than 1 | John E. Sununu ◯ | Libertarian **"Ken" Blevens** ◯ | Jeanne Shaheen ◯ | _____ U.S. Senator ◯ |
| For **Representative in Congress** Vote for not more than 1 | Jennifer Horn ◯ | Libertarian **Chester L. Lapointe II** ◯ | Paul W. Hodes ◯ | _____ Rep. in Congress ◯ |