**Migdalia MAGRÍZ–MARRERO, Silvia Rivera–Torres, Plaintiffs,**

v.

**UNIÓN DE TRONQUISTAS DE PUERTO RICO, Local 901, International Brotherhood of Teamsters, a Labor Organization, Defendant.**

Civil No. 10–1201 (ADC).

United States District Court, D. Puerto Rico.

March 27, 2013.

Linda Backiel, Linda Backiel Law Office, San Juan, PR, Barbara Harvey, Detroit, MI, for Plaintiffs.

Jose E. Carreras–Rovir, Jose E. Carreras Law Office, San Juan, PR, for Defendant.

### *OPINION AND ORDER*

AIDA M. DELGADO–COLON, Chief Judge.

Currently pending before the Court are Magríz–Marrero ("Magríz") and Silvia Rivera–Torres' ("Rivera," collectively "plaintiffs") motions for summary judgment (**ECF No. 82**) and imposition of a permanent injunction against the Unión de Tronquistas de Puerto Rico, Local 901 ("the Union" or "defendant") (**ECF No. 97**). Also pending before the Court is plaintiffs' motion to strike defendant's opposition to the motion for summary judgment for failure to comply with Federal and Local Rules of Civil Procedure. **ECF No. 100.**

### I. Procedural History

On July 6, 2010, plaintiffs filed an amended complaint against defendant, their Labor Union, requesting preliminary and permanent injunctions for alleged violations of Sections 101(a)(1) and (2) and 609 of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411–529.[1] **ECF No. 11.** After

---

1. Plaintiffs also requested compensatory and punitive damages, but have since abandoned these requests. *See* **ECF No. 81.** Likewise, although plaintiffs' Amended Complaint (**ECF No. 11**) contains a claim under Sections 101(a)(5), the Court understands that plaintiffs abandoned this claim as well as they failed to argue it in either their request for preliminary injunction (**ECF No. 23**) or their

holding a hearing, the Court granted plaintiffs the requested preliminary injunction on February 18, 2011. ECF Nos. 66, 765 F.Supp.2d 143 (D.P.R.2011), 73. Specifically, the Court ordered that: (1) the Union was preliminarily enjoined from interfering with plaintiffs' exercise of full membership rights of members in good standing, including the right to attend and participate in meetings, to campaign and be nominated for Union office, and to have their names placed on ballots for Union office; (2) the Union was preliminarily enjoined from barring plaintiffs' names from nomination or election based on the disciplinary actions which underlie the present action; (3) the Union was preliminarily enjoined from enforcing the $10,000 fine imposed upon plaintiffs; (4) the Union was enjoined from prohibiting or impeding plaintiffs' reinstatement to their positions as stewards; and (5) the Union was preliminarily enjoined from imposing or threatening discipline against plaintiffs for exercising their rights to campaign and run for Union office or enforce their legal remedies challenging the Union's actions. ECF No. 66.

Currently pending before the Court is plaintiffs' motion for a permanent injunction, which requests five types of relief, namely that: (1) they be reinstated to membership in good standing in their Union for as long as they continue to pay dues and meet the requirements of membership; (2) the Court vacate and nullify the $10,000 fines that were imposed against each of them; (3) plaintiffs maintain their eligibility as candidates for Union office and for the positions of stewards in their shops; (4) the Union be permanently enjoined from interfering in any way with the exercise of plaintiffs' full membership rights; and (5) the Union be permanently enjoined from threatening, intimidating or retaliating against plaintiffs

for exercising their membership rights. ECF No. 82. The Union opposed the motion on several grounds, including mootness because the elections in which plaintiffs sought to participate have passed and that the Union has not, as yet, enforced the $10,000 fines against plaintiffs. ECF No. 89. Additionally, the Union claims that plaintiffs' arguments rest upon conduct that occurred after entry of the preliminary injunction. *Id.* Plaintiff filed a reply, arguing that the controversy is not moot, that the Court enjoys jurisdiction to enter a permanent injunction under the LMRDA and that such an injunction is appropriate here. ECF No. 91.

As a preliminary matter, the Court already determined that entry of a permanent injunction was inappropriate where plaintiffs had not prevailed on the merits of their underlying claims through a jury trial or successful motion for summary judgment. ECF No. 94. As a result, plaintiffs filed a motion for summary judgment, which is also pending before the Court at this time. ECF No. 97. Defendant opposed the motion (ECF Nos. 98, 99) and plaintiff filed a motion to strike defendant's opposition for failure to comply with Federal Rule of Civil Procedure 56 ("Local Rule 56") (ECF No. 100), as well as a reply (ECF No. 102).

## II. Motion to Strike

 The Court begins by addressing plaintiffs' motion to strike defendant's opposition to the motion for summary judgment for failure to comply with Local Rule 56. *See* ECF No. 100.

Local Rule of Civil Procedure 56(c) ("Local Rule 56(c)") mandates that a party opposing a motion for summary judgment submit an opposing statement of material facts, admitting, denying or qualifying

request for summary judgment and perma- nent injunction (ECF Nos. 82, 97).

facts propounded by the movant. D.P.R. Civ. R. 56(c). Along the same vein, Federal Rule of Civil Procedure 56 ("Federal Rule 56" or "Rule 56") states that a party contesting a fact set forth by its adversary must support its assertion by citing to the record or demonstrating that the material cited does not establish the fact it is cited in support of. Fed.R.Civ. P. 56(c).

Furthermore, the anti-ferreting subsection of Local Rule 56 provides that the Court has "no duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. Civ. R. 56(e). Likewise the anti-ferreting provision of Federal Rule 56 states that the Court "need consider only the cited materials." Fed. R.Civ. P. 56(c)(3).

Here, defendant failed to file any opposing statement of facts. Rather, defendant noted that it does not dispute the following: (1) any fact found or legal determination made by this Court in the Opinion and Order granting the preliminary injunction (ECF No. 66); (2) stipulations previously reached by the parties (**ECF No. 37**); (3) factual findings made by the National Labor Relations Board ("NLRB") (**ECF No. 831**); or (4) the record developed during the preliminary injunction hearing (**ECF No. 39**). **ECF No. 99.** Defendant did broadly dispute all facts relating to post-preliminary injunction actions cited by plaintiffs in their motion for summary judgment and accompanying statement of uncontested material facts. *Id.* Defendant submitted a declaration of the Union Secretary Treasurer, Alexis Rodríguez ("the Rodríguez declaration"), in support of its opposition. **ECF No. 98–1.**

The Court finds that defendant's inclusion of the Rodríguez declaration without reference in any opposing statement of facts filed with the Court violates the anti-ferreting provisions of both Federal and Local Rules 56. Additionally, by failing to file an opposing statement of material facts citing to record evidence in support of its broad denial of plaintiffs' post-preliminary injunction facts, defendant has indeed run afoul of both Federal Rule 56(c) and Local Rule 56(c). However, the Court does not understand that plaintiffs' requested sanction of striking defendant's filings in opposition to summary judgment is the appropriate course. Both the Local Rule and the Federal Rule provide that the Court may deem admitted any fact not properly controverted. Fed.R.Civ. P. 56(e)(2); D.P.R. Civ. R. 56(e). Additionally, both rules also allow the Court to disregard material that violates their respective anti-ferreting provisions. Fed.R.Civ. P. 56(c)(3); D.P.R. Civ. R. 56(e). Thus, the Court understands that striking the Rodríguez declaration and deeming admitted all of plaintiffs' properly-supported proposed material facts represents an appropriate sanction. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion to strike (**ECF No. 100**).

### III. Factual Background

Consistent with the summary judgment standard, the Court states the facts in the light most favorable to the nonmoving party. *See Vera v. McHugh,* 622 F.3d 17, 26 (1st Cir.2010); *Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... [the Court] will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera,* 622 F.3d at 26 (internal quotations and citation omitted). Moreover, the Court does not consider hearsay statements nor allegations presented that do not properly provide an accurate and specific reference to the record. *See* D.P.R.Civ.R. 56(e)("The [C]ourt may disregard any statement of fact not supported

by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

As defendant failed to submit a statement of material facts, the facts contained in this section are derived primarily from plaintiffs' statement of material facts (**ECF No. 97–1**).[2] Although defendant waived objection to plaintiffs' proffered facts, the Court does not admit the facts wholesale, but, rather, includes only those facts properly supported by the cited evidentiary record and stipulations by the parties. Proposed facts unsupported by the material cited[3] or devoid of citation are not included in the Court's recitation of the facts below. Proposed facts based on inadmissible, unstipulated material is likewise excluded. Where necessary, the Court has supplemented plaintiffs' proposed facts with facts stipulated by the parties (**ECF No. 37**) and factual determinations made by the Court in the Opinion and Order granting a preliminary injunction (ECF No. 66).

Magríz and Rivera were members in good standing of the Union until they were suspended for six years, beginning on March 10, 2009. **ECF No. 97–1 ¶ 1;** ECF No. 66 ¶ 1. Magríz had been employed at Crowley Liner Services of Puerto Rico ("Crowley") since approximately June 27, 1995 and Rivera had been employed at Pepsi–Cola Manufacturing ("Pepsi") since January 1, 1987. **ECF No. 97–1 ¶ 2;** ECF No. 66 ¶ 2. Plaintiffs served as the elected stewards of their respective units until they were suspended from membership and removed as stewards on March 10, 2009. **ECF No. 97–1 ¶ 3;** ECF No. 66 ¶ 3. Stewards participate in the Show Stewards' Council ("Stewards' Council"). The Stewards' Council gathers all stewards every two months to discuss pending issues, such as social issues of interest, new shops and grievances. The meetings afford them the opportunity to communicate with the Union's Executive Board ("the Board") and business agents. The stewards, in turn, take the information acquired at the Stewards' Council meeting to inform their shop members. **ECF No. 97–1 ¶ 4;** ECF No. 66 ¶ 4.

The Coca–Cola Collective Bargaining Agreement ("CBA") expired at the end of June, 2008, and was extended by the parties, in writing, through the end of July, 2008. At that time, it expired and was not extended further. **ECF No. 97–1 ¶ 8;** ECF No. 66 ¶ 8.

Plaintiffs, along with Maritza Quiara ("Quiara") and Humberto Miranda ("Mi-

---

**2.** Many of plaintiffs' proffered facts are derived from the Court's factual determinations in its Opinion and Order granting the motion for preliminary injunction. *See* ECF No. 66. These facts, along with those included in the Opinion and Order but not cited by plaintiffs in support of their motion for summary judgment, are deemed admitted. As the Opinion and Order granting the preliminary injunction cites the evidence from which these factual determinations were derived, the Court cites only to its previous Opinion and plaintiffs' statement of material facts herein, but not directly to the underlying evidence of record.

**3.** Along the same vein, the Court does not accept facts supported solely by citation to the lengthy exhibit list from the preliminary injunction hearing (ECF No. 39) without further citation to a specific exhibit entered into evidence at the hearing.

randa") were all members of a partial slate of candidates for Union office, known as "Teamsters Making a Difference." [4] At the August 30, 2008 nominations meeting, Magríz was nominated for the position of Vice President and Rivera was nominated for a Trustee position. Quiara was nominated for the position of President and Miranda was also nominated for a Trustee position. **ECF No. 97–1** ¶ 5; **ECF No. 66** ¶ 5.

On September 10, 2008, Coca–Cola suspended five Union shop stewards from employment, accusing them of leading a work stoppage during the previous night. On September 15, 2008, the Union's principal officer, Germán Vázquez ("Vázquez"), met with Coca–Cola employees in Cayey, Puerto Rico, near the Coca–Cola plant. The purpose of the meeting was, *inter alia*, obtaining authorization to strike if the Union could not persuade Coca–Cola to immediately reinstate the stewards and to return to the bargaining table. **ECF No. 97–1** ¶ 9; **ECF No. 66** ¶ 9. All Union members present voted in favor of the strike and other matters discussed. **ECF No. 97–1** ¶ 10; **ECF No. 66** ¶ 10.

A regular election was held on October 3, 2008. **ECF No. 97–1** ¶ 6; **ECF No. 66** ¶ 6. During the election, the "Teamsters Making a Difference" slate was supported at Coca–Cola by a vote of 108–6. **ECF No. 97–1** ¶ 7; **ECF No. 66** ¶ 7. On October 5, 2008, the "Teamsters Making a Difference" slate filed a post-election protest, enumerating complaints about election violations. **ECF No. 97–1** ¶ 11; **ECF No. 66** ¶ 11.

On or about October 6, 2008, the Union fired José Adrián López as its business agent for the Coca–Cola shop. **ECF No. 97–1** ¶ 12; **ECF No. 66** ¶ 12. On or about October 10, 2008, Coca–Cola converted the stewards' suspensions into permanent discharges. **ECF No. 97–1** ¶ 13; **ECF No. 66** ¶ 13. On October 12, 2008, the fired stewards called a meeting of Coca–Cola workers. All Coca–Cola workers present signed a petition to authorize a strike if the company did not promptly reinstate the fired stewards, promise that it would not file unfair labor practice charges against the Union and reconvene contract negotiations. **ECF No. 97–1** ¶ 14; *see* **ECF No. 83–1.**[5] Plaintiffs attended the October 12th meeting, along with workers from other shops. **ECF No. 97–1** ¶ 15; *see* **ECF Nos. 39, 83–1.** Quiara did not attend the meeting as she was hospitalized at the time. **ECF No. 97–1** ¶ 16; **ECF No. 66** ¶ 14.

On October 14, 2008, following the unanimous strike authorization vote by Coca–Cola employees, Vázquez sought and obtained approval for strike payments by the International Union. **ECF No. 97–1** ¶ 10; **ECF No. 66** ¶ 10. On October 20, 2008, the Coca–Cola workers went on strike to protest the stewards' discharge and to reconvene negotiations. The stewards, along with López, constituted the Union's bargaining committee. No Union agent, representative or official went to the Coca–Cola strike area from October 20 through October 22, 2008, nor did any agent communicate directly with Union members about the Union's position regarding the

---

4. Parties alternatively refer to the partial slate as "Teamsters Making a Difference" and "Teamsters Making the Difference." The Court uses the "Teamsters Making a Difference" variation herein.

5. **ECF No. 83–1** is the Decision of the NLRB's Administrative Law Judge and subsequent

Decision and Order by a three-member NLRB panel. It was also admitted as evidence during the Preliminary Injunction. See **ECF No. 39** (Preliminary Injunction Exhibit ("Exhibit") 44). Defendant specified in its opposition to the motion for summary judgment that it does not contest the facts found by the Administrative Law Judge. **ECF No. 99.**

strike. **ECF No. 97–1** ¶ 17; ECF No. 66 ¶ 16. No Union agent, representative or official told Magríz, Quiara or Rivera that the strike was not authorized by the Union or that they could be subject to any internal discipline for supporting or participating. **ECF No. 97–1** ¶ 18; ECF No. 66 ¶ 16. Plaintiffs and Quiara attended the strike,[6] along with other Union stewards and workers. **ECF No. 97–1** ¶ 19; *see* **ECF Nos. 39, 83–1.** The strike ended on October 22, 2008. **ECF No. 97–1** ¶ 20; *see* **ECF No. 83–1.**[7]

By letters dated January 26, 2009, Vázquez notified Magríz, Quiara and Rivera that internal Union charges were brought against them because of their attendance at the October 12th assembly and for their participation in the October 20–22 strike. **ECF No. 97–1** ¶ 22; 22; **ECF No. 83–1.** Their hearings were scheduled for February 12, 13 and 14, 2009. **ECF No. 97–1** ¶ 24; *see* **ECF No. 39** (Exhibit 1). Plaintiffs did not attend the Union hearings held against them. ECF No. 66 ¶ 20.[8]

By letters dated March 10, 2009, the Union notified plaintiffs and Quiara that they were expelled from membership for six years, removed from their elected positions as shop stewards and fined $10,000 each. **ECF No. 97–1** ¶ 24; **ECF No. 83–1;** *see* **ECF No. 39** (Exhibit 15). Plaintiffs and Quiara filed appeals to the Union's international headquarters by letters dated March 23, 2009. **ECF No. 97–1** ¶ 25; **ECF No. 83–1.**

On April 7, 2009, the U.S. Secretary of Labor filed suit against the Union based on claims that election violations may have affected the outcome of the Union's October 3, 2008 officer election. **ECF No. 97–1** ¶¶ 26, 52; Civil Case No. 09–1329, **ECF No. 1.** Ultimately, the parties to that case reached a settlement by which the Union conducted a new election in 2011, whose results were certified by the Court. **ECF No. 97–1** ¶ 53; Civil Case No. 09–1329, **ECF Nos. 24, 46, 47.**

By letter dated April 27, 2009, General Teamsters President James Hoffa ("President Hoffa") denied plaintiffs' and Quiara's appeals and request for stay of the imposed sanctions. **ECF No. 97–1** ¶ 27; **ECF No. 83–1.**

On June 19, 2009, the Independent Review Board asked President Hoffa to investigate and institute charges against the Union's principal officer, Germán Vázquez ("Vázquez"), for embezzling Union funds. **ECF No. 97–1** ¶ 28; ECF No. 66 ¶ 21. Vázquez remained in office pending disposition of the charges against him. **ECF No. 97–1** ¶ 29; ECF No. 66 ¶ 23. Vázquez was ordered suspended from membership and removed from Union office by the International Union's General Executive Board on March 5, 2010. The suspension was based on a finding that Vázquez embezzled $72,302.00. The sanction was imposed for a period of one year or until Vázquez made full restitution for the amount embezzled. **ECF No. 97–1** ¶ 30; ECF No. 66 ¶ 40. When Vázquez was removed from the Union, Alexis Rodríguez

---

6. Plaintiffs' proposed fact indicates that they only attended on October 20th; however, the exhibit cited in support of the fact indicates that they attended from October 20th until October 22nd. *Compare* **ECF No. 93–1** p. 6 *with* **ECF No. 83–1** p. 21.

7. The ALJ decision was also admitted into evidence as Exhibit 44 during the Preliminary Injunction hearing. *See* **ECF No. 39.**

8. Plaintiffs' proposed fact, which states that they requested an extension of the hearing, which was denied, is unsupported by the cited material. Thus, the Court has instead included this fact as found by the Court in the Opinion and Order granting a preliminary injunction (ECF No. 66).

was appointed President. **ECF No. 97–1** ¶ 32; ECF No. 66 ¶ 41.

On or about September 1, 2009, internal Union charges were filed against the remaining members of the "Teamsters Making the Difference" slate and three of the slate's announced election observers: Humberto Miranda ("Miranda"), Raymond Reyes ("Reyes"), Orlando Hernández ("Hernández") and Jesús Báez ("Báez") for participating in and/or attending the October 12, 2008 meeting and/or the October 20–22, 2008 Coca–Cola strike. Their hearings were scheduled for September 30, 2009. All but Hernández attended their hearings,[9] although Miranda and Báez did not present evidence at their hearings. **ECF No. 97–1** ¶ 32; **ECF No. 83–1; ECF No. 37** ¶¶ 20, 21, 43, 45. At all relevant times, Reyes and Hernández were Union shop stewards at Hertz and Metrobus, their respective shops. **ECF No. 97–1** ¶ 33; ECF No. 66 ¶ 25; **ECF No. 83–1.** Báez and Miranda were not shop stewards. **ECF No. 97–1** ¶ 33; ECF No. 66 ¶ 25. The Union never imposed disciplinary sanctions against Reyes, Miranda, Báez or Hernández. **ECF No. 97–1** ¶ 34; **ECF No. 83–1; ECF No. 37** ¶ 44.

None of the Coca–Cola employees who were members of the Union and who participated in the strike were disciplined by the Union. Furthermore, none of the Union member Coca–Cola employees who participated in the Coca–Cola employees' meeting on October 12th were disciplined by the Union. **ECF No. 97–1** ¶ 35; ECF No. 66 ¶ 27; 27; **ECF No. 37** ¶¶ 49–50. The following Union members, who were employed by Crowley, attended the Coca–Cola employees' October 12th meeting for which plaintiffs were disciplined: Brenda Rivera, Daisy Feliciano, Aracelis Borrás, Israel Román, Solesnir González and José Grajales. With the exception of José Grajales, the Union did not stipulate to know-

ing that these employees participated in the October 12th meeting prior to March of 2009. **ECF No. 97–1** ¶ 36; ECF No. 66 ¶ 28; **ECF No. 37** ¶ 52. The following Union members and shop stewards employed by UPS attended the Coca–Cola employees' October 12th meeting: Abigail Guzmán–Rosario and Hiram Castro. The Union does not stipulate to knowing this fact prior to March of 2009. **ECF No. 97–1** ¶ 37; ECF No. 66 ¶ 29; **ECF No. 37** ¶ 53.

Edgardo Rivera, the Union steward for UPS, attended the strike conducted between October 20 and 22, 2008. Angel Chico, a Union member employed at Crowley, also attended the strike on October 20, 2008. **ECF No. 97–1** ¶ 38; ECF No. 66 ¶ 30; **ECF No. 37** ¶ 54. No disciplinary action was taken against the Crowley or UPS Union members for attending the October 12th meeting or strike. **ECF No. 97–1** ¶ 39; ECF No. 66 ¶ 31.

Vázquez and other Union officers stated to Union members, including those employed at Crowley, that plaintiffs and Quiara were disciplined by the Union because they participated in an illegal strike and because they had made other statements in violation of the Broad Order, Bylaws and International Constitution. During the Preliminary Injunction Hearings, plaintiffs testified that they did not participate in planning or organizing the strike, as well as that they did not have any decision-making authority regarding the strike. **ECF No. 97–1** ¶ 41; ECF No. 66 ¶ 32.

The charges filed against plaintiffs and Quiara, as well as the four men charged on September 1, 2009, were the only internal Union charges that the Union filed against members during the three years leading up to 2010. **ECF No. 97–1** ¶ 42; ECF No. 66 ¶ 36. None of the charged slate mem-

---

**9.** The parties stipulated that no hearing was held for Hernández. **ECF No. 37** ¶ 37.

bers or observers were Coca–Cola employees. **ECF No. 97-1** ¶ 44; **ECF No. 66** ¶ 38. The discipline imposed on plaintiffs and Quiara was the only discipline that the Union imposed on any of its members during the three years leading up to 2010. **ECF No. 97-1** ¶ 43; **ECF No. 66** ¶ 36; **ECF No. 83-1.** Plaintiffs have not paid the $10,000 fines imposed on them as sanctions and the Union has not attempted to collect the fines. **ECF No. 97-1** ¶ 44; ECF No. 66 ¶ 37.

Plaintiffs challenged the Union's imposed disciplinary actions in unfair labor practices charges filed before the NLRB on July 31, 2009. **ECF No. 97-1** ¶ 45; *see* **ECF No. 83-1.**[10] On November 3, 2009, the NLRB issued complaints, consolidating the cases of the three previously-charged female members of the "Teamsters Making a Difference" slate with those of the newly-charged male members and supporters. **ECF No. 97-1** ¶ 46; ECF No. 66 ¶ 35. The NLRB cases were tried on a stipulated record in December of 2009 and January of 2010. **ECF No. 97-1** ¶ 48; ECF No. 66 ¶ 39; **ECF No. 37** ¶ 24. On April 16, 2010, Administrative Law Judge Bruce Rosenstein ("the ALJ") issued his ruling that the Union violated Section 8(b)(1)(A) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, by expelling plaintiffs and Quiara from membership, removing them from their positions as shop stewards and fining them each $10,000. **ECF No. 97-1** ¶ 49; **ECF· No. 83-1.** The ALJ found that plaintiffs engaged in protected concerted activities in their attendance at the October 12th meeting and participation in the October 20–22 strike. Furthermore,

the ALJ found that the disciplinary sanctions imposed on plaintiffs and Quiara were disparate when compared to the treatment of other meeting attendees and strike participants due to their inclusion on the "Teamsters Making a Difference" slate. In making these findings, the ALJ explicitly rejected the Union's argument that plaintiffs had violated the Broad Order. **ECF No. 97-1** ¶ 57; **ECF No. 83-1.**

The ALJ recommended that the NLRB order the Union to vacate and expunge all records of the disciplinary action against plaintiffs and Quiara; to reinstate them as members in good standing and as shop stewards; and to rescind the fines. **ECF No. 97-1** ¶ 49; ECF No. 66 ¶ 42; **ECF No. 37** ¶ 26. The Union did not comply with the ALJ's recommendations, but, rather, filed exceptions to the recommended Decision. **ECF No. 97-1** ¶ 50; ECF No. 66 ¶ 42; **ECF No. 37** ¶ 26. On September 18, 2012, the NLRB panel issued its Decision and Order. Therein, the NLRB held that the strike was not illegal and that the Union thus violated Section 8(b)(1)(A) of the NLRA by imposing sanctions on plaintiffs and Quiara because· the employees' Section 7 right to engage in a protected strike outweighed the Union's right to discipline its members. **ECF No. 97-1** ¶ 51; **ECF No. 83-1.** The NLRB ordered the Union to "make [plaintiffs] whole for any loss of earnings and other benefits suffered as a result of their lost seniority." **ECF No. 97-1** ¶ 51; **ECF No. 83-1.** However, the NLRB did not order the Union "to reinstate [plaintiffs] to full membership and their shop steward positions or to rescind the fines levied against them, as [it found that] those remedies are beyond the

**10.** Several of the proposed facts set forth by plaintiffs relating to the NLRB case are unsupported by the material cited; accordingly, the Court has been unable to include them herein. Rather, the Court has filled in the gap in the summary judgment record with the facts previously found in relation to the pre-

liminary injunction where necessary. Moreover, in the instances where the facts proposed by plaintiffs extend or mischaracterize the findings of the NLRB, the Court has revised the proposed facts to properly reflect the underlying evidence.

scope of Section 8(b)(1)(A)." **ECF No. 97–1 ¶ 51; ECF No. 83–1.**

From March 10, 2009 until February 6, 2010, Pepsi–Cola continued to deduct Union dues from Rivera's pay. Afterwards, she made direct payments to the Union. **ECF No. 97–1 ¶ 54; ECF No. 66 ¶ 46.** From March 10, 2009 until the present, Magríz has periodically remitted full membership dues to the Union. **ECF No. 97–1 ¶ 55; ECF No. 66 ¶ 47.**

At the preliminary injunction hearing, Magríz testified that she sought reinstatement because she believes in her Union and wants to participate and contribute in its processes, which she believes should be more democratic. She wished to participate as a delegate in the Union's convention. Furthermore, Magríz wished to be reinstated in order to run for a position as an elected officer in the Union's 2011 elections. **ECF No. 66 ¶ 53.** Both plaintiffs requested reinstatement in order to be members in good standing of the Union and to be able to run in the October, 2011 election. *Id.* at ¶ 54. The nominations meeting was held in September of 2011. **ECF No. 37 ¶ 57; ECF No. 66 ¶ 50.**

On February 18, 2011, the Court issued an Opinion and Order granting plaintiffs' request for a preliminary injunction, ordering, *inter alia,* that the Union be enjoined from prohibiting or impeding plaintiffs' reinstatement as duly elected stewards. **ECF No. 97–1 ¶ 58; ECF No. 66.** However, Magríz was not immediately reinstated as a steward. **ECF No. 97–1 ¶ 59; ECF No. 69–1 ¶¶ 8–9.** Magríz' employer, Crowley, had transferred her from the Car Division to another division, thus effectively removing her from her stewardship. **ECF No. 73.**[11] On February 25, 2011, the same day when the Union directed Crowley to recognize Magríz as the duly elected steward, the Union posted a notice of a steward election for the Car Division steward, to be held on March 4, 2011. **ECF No. 97–1 ¶ 61; ECF No. 69–1 ¶ 14.** Upon application by Magríz for clarification of the preliminary injunction (**ECF No. 69**), the Court ruled that, "[i]n order to reinstate [Magríz] to her status before the defendant's unlawful suspension, defendant must secure that Magríz attains the rights and privileges enjoyed as a shop steward and union member before the illegal action." *Id.* Accordingly, the Court ordered the Union to lobby Crowley to recognize Magríz' super-seniority and restore her *status quo ante* rights. *Id.*[12]

11. Many of plaintiffs' proposed facts relating to their reinstatement as shop stewards rest on faulty citations. Accordingly, the Court has disregarded these facts pursuant to Local Rule 56. However, in order to complete the summary judgment and permanent injunction record as much as possible, the Court has included relevant facts previously included by the Court in its Order supplementing the preliminary injunction. *See* **ECF No. 73.**

12. The remainder of plaintiffs' proposed facts regarding post-preliminary injunction occurrences cite exclusively to **ECF Nos. 82–1** and **82–2,** which purport to be translations of plaintiffs' sworn statements. However, the original Spanish language sworn statements were not provided to the Court. Thus, these documents violate the best evidence rule and are not properly admitted as evidence under Federal Rule of Evidence 1002. Furthermore, the translations submitted were rendered by plaintiffs' counsel rather than a federally-certified interpreter. As there is no indication that defendant stipulated to waive the requirement that all translations be made by such an interpreter, **ECF Nos. 82–1** and **82–2** must be excluded on this ground as well. *See* D.P.R. Civ.R. 5(g) (mandating that all translations be performed by a federally-certified interpreter unless parties stipulate otherwise); Fed. R.Evid. 604 ("An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation.").

## IV. Motion for Summary Judgment

The Court begins its analysis with the familiar recitation of the standard for evaluating a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodríguez v. Puerto Rico,* 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat "a properly supported motion for summary judgment." *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortés–Irizarry v. Corporación Insular,* 111 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or nonmovant—who would bear the burden of proof on that issue at trial." *Alamo Rodríguez v. Pfizer Pharma.,* 286 F.Supp.2d 144, 151 (D.P.R.2003)(citing *Pérez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir.2001)).

### A. Jurisdiction

■ The Court is bound to examine its jurisdiction over the case before it may proceed to scrutinize its merits. *E.g., Sindicato Puertorriqueño de Trabajadores v. Fortuño,* 699 F.3d 1, 8 (1st Cir.2012). Thus, before addressing the sufficiency of plaintiffs' evidence and the merit of their request for summary judgment, the Court addresses the jurisdictional arguments raised by defendant, the Union. *See* ECF Nos. 88, 89, 98, 99.

#### 1. Preemption by National Labor Relations Act and the NLRB

The Union argues that this Court does not have jurisdiction to issue the requested injunction because Sections 8(b)(1)(A) and 10(j) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, give the NLRB jurisdiction to issue such an injunction. ECF Nos. 88, 89, 98, 99.

■ "The plain language of the LMRDA indicates that Congress did not intend for the NLRB to have jurisdiction

over LMRDA claims." *Gurley v. Hunt,* 287 F.3d 728, 731 (8th Cir.2002) (addressing a *res judicata* claim where the NLRB had already addressed the underlying factual circumstances in an unfair labor practice proceeding). In fact, Section 102 of the LMRDA specifies that a plaintiff whose rights under Section 101(a) have been violated "may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.[13] Thus, "[t]he federal courts are the only institution granted jurisdiction [over LMRDA claims] by the statute; it does not give adjudicative authority to any administrative agency." *Gurley,* 287 F.3d at 731. Moreover, in contrast to the relief provided by the NLRA, which is designed to protect public rights, relief under the LMRDA is intended to vindicate private rights. *Gurley,* 287 F.3d at 732. The different rights vindicated by the LMRDA and the NLRA, as well as the plain language of Section 102 indicate that this Court is the appropriate forum for plaintiffs' allegations that their rights under LMRDA Section 101(a)(1) and (2) were violated by the Union.

Furthermore, noting that the purpose of Congress as evidenced in Section 102 of the LMRDA is the ultimate touchstone, the Supreme Court has already found that Section 101(a)(5) falls within the provenance of the federal district courts. *Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Hardeman,* 401 U.S. 233, 91 S.Ct. 609, 613–15, 28 L.Ed.2d 10 (1971). Because Section 102 applies equally to plaintiffs whose rights under Section 101(a)(1), (2) and (5) are violated, the Court sees no reason to accept defendant's invitation to deviate from this Supreme Court jurisprudence relating to Section 101(a)(5). Consequently, the Court finds no merit in defendant's argument that the NLRA preempts the LMRDA and divests the Court of its jurisdiction over the case at bar.

## 2. Mootness

■ Defendant's next jurisdictional argument is that plaintiffs' claims and requested remedies became moot once elections were held in 2011 following the Court's entry of a preliminary injunction. **ECF Nos. 88, 89, 98, 99.**

■ "Article III of the Constitution restricts federal courts to the resolution of actual cases and controversies." *Chico Serv. Station, Inc. v. Sol P.R. Ltd.,* 633 F.3d 20, 35 (1st Cir.2011) (internal quotation omitted). Thus, the Court may not hear cases which are moot. *Libertarian Party of New Hampshire v. Gardner,* 638 F.3d 6, 12 (1st Cir.2011). "When the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome a case or controversy ceases to exist, and dismissal of the action is compulsory." *Id.* (quoting *Chico Serv. Station, Inc.,* 633 F.3d at 35). However, an exception exists for cases that raise issues that are "capable of repetition, yet evading review." *Id.*

Free speech labor cases addressing standing and mootness, such as the one at bar, have recognized that broad interpretations of standing must be applied as "limitations on free speech rights can result in a 'chilling effect' on others' exercise of those rights." *E.g., Ruocchio v. United Transport. Union, Local 60,* 181 F.3d 376, 385 (3rd Cir.1999). Here, plaintiffs assert that defendant instituted internal Union proceedings as punishment and in retalia-

---

**13.** 29 U.S.C. § 412 contains an identical provision for violations of Section 609. The analysis in this section thus applies equally to plaintiffs' claim of retaliation under Section 609.

tion for plaintiffs' participation in an opposition slate and in order to prevent plaintiffs from running for Union office. The proceedings resulted in plaintiffs' expulsion from the Union for six years and their removal from their positions as shop stewards.

At this time, having been reinstated to membership with all attendant rights by the preliminary injunction, plaintiffs could choose to run again in any election held by the Union. As a result, similar disciplinary proceedings could be instituted against plaintiffs by the Union at any time, thus threatening to chill plaintiffs' speech, as well as that of other Union members. Accordingly, this case could fall within the category of cases which are "capable of repetition yet evading review." *See Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 473, 111 S.Ct. 880, 112 L.Ed.2d 991 (1991) (finding that a union member's post-election challenge to a refusal to distribute campaign mailings was not moot, in part because the member had "run for office and may well do so again"); *Ruocchio*, 181 F.3d at 387–88 (finding that an LMRDA claim for monetary damages was not rendered moot following a plaintiff union treasurer's reinstatement); *Johnson v. Kay*, 860 F.2d 529, 538 (2d Cir.1988) (applying the "capable of repetition yet evading review" exception to mootness in an LMRDA case).

Additionally, defendant overlooks an important and undisputed fact: the $10,000 fines imposed upon plaintiffs were never collected, nor revoked. Thus, inasmuch as one of the complained-of acts of punishment and retaliation remains pending, the issue regarding alleged violations of Sections 101(a)(1) and (2) and 609 remains live, even without the assistance of the "capable of repetition yet evading review"

exception. Thus, these claims are not moot and the Court is not divested of its jurisdiction.

## B. Violations of Sections 101(a)(1) and (2) and 609

Having cleared the jurisdictional hurdles, the Court assays the merits of plaintiffs' motion for brevis disposition of their claims under Sections 101(a)(1) and (2) and 609 of the LMRDA. *See* **ECF No. 97.**

The LMRDA was enacted by Congress to protect the equal rights of union members. *McCafferty v. Local 254, Svc. Employees Int'l Union*, 186 F.3d 52, 57 (1st Cir.1999). "In enacting the LMRDA, Congress found that 'it is essential that labor organizations and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations.'" *Id.* (citing 29 U.S.C. § 401(a)). In particular, "Congress modeled Title I [of the LMRDA] after the Bill of Rights" in order to "restate a principal First Amendment value—the right to speak one's mine without fear of reprisal." *G.P. Reed v. United Transportation Union*, 488 U.S. 319, 325, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (internal quotations omitted). Congress intended that the LMRDA Bill of Rights set forth in Title I should provide union members with the protection "necessary to bring an end to abuses by union leadership that had curtailed union democracy." *Id.* The rights protected by the Bill of Rights include "equal rights and privileges to nominate and vote for candidates,[14] as well as freedom of speech and assembly and protection from improper discipline." *McCafferty*, 186 F.3d at 57. Title I provides relief through a private action filed by the ag-

---

**14.** This right extends to union members who seek elective union offices. *Tucker v. Bieber,* 900 F.2d 973, 977 (6th Cir.1990).

grieved union member in federal court. *Id.*

■ Here, plaintiffs' claims arise under Sections 101(a)(1) and (2) and 609 of the LMRDA. *See* **ECF No. 11.** Section 101(a)(1) and (2) "is intended to ensure that unions use democratic processes" and grants union members equal rights of association and expression. *Johnson v. Kay*, 860 F.2d 529, 536 (2d Cir.1988). Specifically, it provides:

(a)(1) Equal rights.

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of ever member toward

the organization as an institution and toe refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(1) and (2). Thus, "[t]he typical Title I claim involves an allegation of unequal treatment among union members." *Molina v. Unión De Trabajadores De Muelles Y Ramas Anexas, Local 1740, UTM–ILA*, 762 F.2d 166, 168 (1st Cir. 1985) (citing *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964)). Moreover, the LMRDA Section 609 "prohibits a labor organization from disciplining any of its members in retaliation for the exercise of [Title I] rights." *Local No. 48, United Brotherhood of Carpenters and Joiners of America v. United Brotherhood of Carpenters and Joiners of America*, 920 F.2d 1047, 1056 (1st Cir.1990) (citing 29 U.S.C. § 529); *see also Salzhandler v. Caputo*, 316 F.2d 445, 449 (2d Cir.1963) ("Section 609, 29 U.S.C. § 529 makes doubly secure the protection of the members in the exercise of their rights.") [15] The motivation underlying the challenged action is dispositive—a successful plaintiff must show illicit motive or bad faith. *Local No. 48*, 920 F.2d at 1056. Section 102 provides that "[a]ny person whose rights secured by [Title I] have been infringed by any violation ... may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

In its Opinion and Order granting a preliminary injunction, the Court highlighted the NLRB ALJ's findings, particularly the following:

**15.** Section 609, the retaliation provision, is located in Title IV, which is usually only enforceable by the Secretary of Labor. *See McCafferty*, 186 F.3d at 58. However, the enforcement provision cited by Section 609 is Section 102, the Title I enforcement provision. *See* 29 U.S.C. §§ 412 and 529. Both the Supreme Court and the First Circuit Court of Appeals have applied Section 609 in private party suits. *See Breininger v. Sheet Metal Workers Int'l Assn. Local Union No. 6*, 493 U.S. 67, 90, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989); *Local No. 48*, 920 F.2d at 1056.

(1) The October 20–22 strike was caused by the unfair labor practices of Coca–Cola. Accordingly, plaintiffs' attendance at the October 12th assembly and participation in the October 20–22 strike was protected conduct.

(2) Fines and discipline were imposed against plaintiffs, as Union members who engaged in protected concerted activities by their attendance at the October 12th assembly and participation in the unfair labor practices strike.

(3) The disciplinary sanctions imposed on plaintiffs and Quiara are disparate when compared to the treatment received by other stewards and members who engaged in the same conduct. The Union did not impose sanctions on any other shop stewards or Union members for their attendance or participation in the assembly or strike.

(4) The Union never informed plaintiffs or Quiara that the strike was not supported by the Union.

(5) The filing of internal Union charges and imposition of sanctions against plaintiffs and Quiara was not only disparate, but occurred in part because they comprised an opposition slate of candidates.

ECF No. 66 (quoting **ECF No. 23–1**). Based in part on these facts, the Court found that plaintiffs were likely to succeed on the merits of their Sections 101(a)(1) and (2) and 609 claims. ECF No. 66. Specifically, the Court found that "[t]he punitive measures taken against them certainly diminished plaintiffs' [U]nion rights, their status as members of the [U]nion, and their [U]nion representation as elected stewards." *Id.* The Court noted that plaintiffs were likely to succeed "in establishing that the disciplinary measures taken against them, guised as sanctions for

attending and supporting the Coca–Cola ... strike, were a mere ruse to thwart their opposition to the victorious incumbent slate and to thwart their participation in the upcoming elections and internal affairs." *Id.* In their opposition to the motion for summary judgment, defendant concedes to the sufficiency of plaintiffs' claims and the evidence supporting them, stating that it does not dispute the Court's legal determinations in the Opinion and Order granting Preliminary Injunction. **ECF No. 99.**[16]

The evidence presented by plaintiffs in support of their request for summary judgment shows that plaintiffs participated in an opposition slate called "Teamsters Making a Difference" which, although supported strongly at Coca–Cola, ultimately failed in the October 2008 election. Following the election, the "Teamsters Making a Difference" slate filed complaints about violations. Only days thereafter, plaintiffs, along with other Union members and shop stewards from Coca–Cola and other shops, participated in a meeting and a strike at Coca–Cola. Although the Union subsequently indicated that the strike was illegal, no indication was given to plaintiffs that the strike had not been approved. Internal Union charges were brought against plaintiffs for their participation. Ultimately, plaintiffs were expelled from membership for six years, removed from their elected positions as shop stewards and fined $10,000 each. No such sanctions were imposed against other participants. Charges were filed against other members of the "Teamsters Making a Difference" slate, but no sanctions were imposed. The charges imposed against the members of the "Teamsters Making a

---

**16.** Rather than contest the sufficiency of plaintiffs' evidence, defendant elected to focus its efforts on the previously-discussed challenges to the Court's jurisdiction. *See* **ECF No. 99.**

Difference" slate were the only charges filed for the three years up until 2010.

Based upon this evidence, in conjunction with the portion of the ALJ's Decision incorporated by the Court in the Opinion and Order, outlined above, the Court finds that the Union indeed violated plaintiffs' rights of free association and speech under Title I and retaliated against them for exercising their Title I rights. Plaintiffs exercised their right to oppose Union policies by running in an opposition slate and lodging post-election complaints. Plaintiffs also exercised their rights to free association and speech by attending the October 12 meeting and participating in the October 20–22 strike. Subsequently, plaintiffs were singled out from among the participants in the October 12th meeting and October 20–22 strike for the institution of internal Union actions, which resulted in expulsion and a fine. *See Savage v. Tweedy*, 895 F.Supp.2d 1063, 1071 (D.Or.2012) (interpreting Section 101(a)(2) to require proof that a union member (1) "exercised the right to oppose union policies; (2) . . . was subjected to retaliatory action; and (3) the retaliatory action was 'a direct result of his or her decision to express a disagreement' with the union's leadership" (quoting *Casumpang v. Int'l Longshoremen's and Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir.2001))). As found by the ALJ, adopted by the Court and subsequently accepted by the Union, the reason for the disparate treatment was that plaintiffs participated in the opposition slate and challenged the Union leadership. Thus, the Court finds no issue of material fact as to plaintiffs' claims under Sections 101(a)(1) and (2) and 609 of the LMRDA[17] and **GRANTS** plain-

tiffs' request for summary judgment (**ECF No. 97**) accordingly.

## V. Motion for Permanent Injunction

■ Having determined that plaintiffs are entitled to judgment in their favor as to their claims under Sections 101(a)(1) and (2) and 609 of the LMRDA, the Court addresses the propriety of their requested relief, namely, a permanent injunction. Plaintiffs request that the Court enjoin the Union by ordering: (1) that plaintiffs be reinstated to membership in good standing in their Union for as long as they continue to pay dues and meet the requirements of membership; (2) that the Court vacate and nullify the $10,000 fines that were imposed against each of them; (3) that plaintiffs maintain their eligibility as candidates for Union office and for the positions of stewards in their shops; (4) that the Union be permanently enjoined from interfering in any way with the exercise of plaintiff's full membership rights; and (5) that the Union be permanently enjoined from threatening, intimidating or retaliating against plaintiffs for exercising their membership rights. **ECF No. 82.**

Under Section 102 of the LMRDA, courts may provide appropriate relief to those whose Title I rights are violated, including injunctive relief. 29 · U.S.C. § 412. A plaintiff who seeks a permanent injunction "must satisfy a four-factor test before a court may grant such relief." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 390, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). First, the plaintiff must show "that it has suffered an irreparable injury." *Id.* Next, the plaintiff must show that "remedies available at law, such as monetary damages, are inadequate to

---

17. Inasmuch as defendant generally challenges the Court's subject matter jurisdiction, the Court finds that it indeed had such jurisdiction as subject matter jurisdiction in a Title I depends upon whether a plaintiff shows a viable violation of Title I rights. *See Calhoon v. Harvey*, 379 U.S. 134, 138, 85 S.Ct. 292, 13 L.Ed.2d 190 (1965).

compensate for that injury." *Id.* Third, the plaintiff must show "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *Id.* Finally, the plaintiff must show that "the public interest would not be disserved by a permanent injunction." *Id.*

 The Court notes that the public interest in entry of an injunction in cases such as the one at bar is strong because "a union member vindicating [rights under Title I] also serves public goals, in that he 'necessarily renders a substantial service to his union as an institution and to all of its members.'" *Reed v. United Transportation Union,* 488 U.S. 319, 325, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (quoting *Hall v. Cole,* 412 U.S. 1, 8, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)). "[B]y vindicating his own right, the successful [Title I] litigant dispels the 'chill' cast upon the right of others" and such suits "frequently prove beneficial not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs." *Hall,* 412 U.S. at 8, 93 S.Ct. 1943 (internal quotation omitted). Appropriate compensation here includes reinstatement of plaintiffs to their position prior to the violation of their rights. This should cause the Union no hardship as it merely reinforces plaintiffs' Title I rights and the Union's own constitution and rules.

Here, plaintiffs were removed from their positions as shop stewards and removed from membership in the Union in retaliation for exercising their rights to free association and speech. Fines were also imposed against plaintiffs, which stand to this day. However, plaintiffs were already reinstated to Union membership with all attendant rights by the Court's preliminary injunction order and there is no evidence of record that further violations have occurred.[18] *See* ECF No. 66. With this in mind, the Court finds that much of the relief requested by plaintiffs is overbroad and/or unwarranted in light of the "well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." *See Local No. 48,* 920 F.2d at 1051. Specifically, plaintiffs' first[19] and third[20] requests[21] are overly broad as they serve to immunize plaintiffs from expulsion or discipline even for legitimate cause under applicable statutes and legitimate Union rules. *See Guzman v. Bevona,* 90 F.3d 641, 650 (2d Cir.1996) (finding that imposition of an injunction was inappropriate where request was overly broad). Additionally, there is no basis on the record for plaintiffs' fifth request, which seeks to enjoin the Union from threatening or intimidating plaintiffs, as no such behavior is apparent on the record before the Court. Consequently, plaintiffs' first, third and fifth requests for injunctive relief are **DENIED.**

 However, the Court finds that an injunction ordering the Union to vacate and nullify the $10,000 fines levied against plaintiffs is indeed appropriate here. The

---

**18.** The record is devoid of post-preliminary injunction facts indicating the necessity of a permanent injunction, in large part due to plaintiffs' attorney's failure to comply with Local Rule 5(g) at **ECF No. 82.**

**19.** The first request is that plaintiffs be reinstated to membership in good standing in their Union for as long as they continue to pay dues and meet the requirements of membership.

**20.** The third request is that plaintiffs maintain their eligibility as candidates for Union office and for the position of stewards in their shops.

**21.** Plaintiffs' fourth request, that the Union be permanently enjoined from interfering in any way with the exercise of plaintiff's full membership rights, is also overly broad, but capable of remedy by the Court. It is discussed below.

fine was imposed as a direct result of the Union's violation of plaintiffs' rights of free association and speech. Although it has not yet been enforced against plaintiffs, while it remains pending, the Union could choose to demand payment at any time. Thus, plaintiffs' second request for relief is **GRANTED.**

Finally, while the Court found plaintiffs' first and third requests to be overly broad, the Court recognizes that plaintiffs' subjection to unwarranted internal proceedings and punishment were severe actions and capable of being repeated. Thus, the Court understands that it is appropriate to include injunctive relief safeguarding plaintiffs' rights in the future. Accordingly, the Court **GRANTS** plaintiffs' fourth request for injunctive relief, but, due to concerns regarding overbroadness, modifies the order to reflect that they shall only enjoy their membership rights while they remain members in good standing of the Union and within the parameters set forth by the constitution and reasonable rules of the Union. Consequently, plaintiffs' request for injunctive relief (**ECF No. 82**) is **GRANTED IN PART AND DENIED IN PART** as set forth above.

## VI. Conclusion

For the reasons set forth above, the Court hereby **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion to strike (**ECF No. 100**), **GRANTS** plaintiffs' motion for summary judgment (**ECF No. 97**) and **GRANTS IN PART AND DENIES IN PART** plaintiffs' request for a permanent injunction (**ECF No. 82**). Pursuant to the portions of the request for permanent injunction which the Court has granted, defendant is:

(1) **ORDERED** to vacate and nullify the $10,000 fines imposed against plaintiffs; and

(2) **ENJOINED** from interfering in any way of plaintiffs' full membership rights while they remain members in good standing of the Union and within the parameters set forth by the constitution and reasonable rules of the Union.

Judgment shall be entered closing this case accordingly.

**IT SO ORDERED.**